IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

WILMINGTON TRUST, NATIONAL
ASSOCIATION, SOLELY IN ITS CAPACITY AS
TRUSTEE FOR THE REGISTERED HOLDERS OF
ASHFORD HOSPITALITY TRUST 2018-KEYS
COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, acting by and through Trimont Real
Estate Advisors, LLC as Special Servicer under the
Pooling and Servicing Agreement dated as of July 16,
2018,

                            Plaintiff,

      v.

ASHFORD NEWARK LP; ASHFORD BWI AIRPORT
LP; ASHFORD OAKLAND LP; ASHFORD PLANO-C
LP; ASHFORD PLANO-R LP; ASHFORD
MANHATTAN BEACH LP; and ASHFORD
BASKING RIDGE LP,

                          Defendants.

Civil Action File No.
1:23-cv-09988-JLR

**MEMORANDUM OPINION
AND ORDER GRANTING
PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT AND
APPOINTING RECEIVER**

THIS MATTER is before the Court on Plaintiff's motion (the "Motion") for default judgment

and for the appointment of a receiver.  Upon review of the Motion, the Complaint, and the supporting

memorandum and declarations, and for good cause shown, the Court **FINDS** as follows:

      1.     That each Defendant was served with the Complaint on November
13, 2023;

      2.     That Defendants failed to answer or otherwise respond to the Complaint
within 21 days of service as required under Rule 12 of the Federal Rules of Civil Procedure;

      3.     That the Clerk entered the default on the record and issued the
required certification;

      4.     That Defendants "ha[ve], through [their] failure to defend the
action, admitted liability to the plaintiff.'" *Sec. & Exch. Comm'n v. Rinfret*, No.
19-CV-6037 (AJN), 2020 WL 6559411, at *2 (S.D.N.Y. Nov. 9, 2020), No. 19-
CV-6037 (AJN), 2020 WL 6559411, at *2 (quoting *City of New York v. Mickalis*

*Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011));

On March 1, 2024, counsel for Defendants filed a letter at ECF No. 47 stating that they do not oppose the requested relief.

5.      That such admissions, among other things, include admitting that Defendants are in default of their obligations under the Loan (as defined herein) by, among other things, failing to pay the amounts due on the maturity of the underlying loan in dispute; and

6.      That the Complaint and Motion demonstrate grounds for the appointment of a receiver of, among other things, seven parcels of land located in four states, with each parcel being currently operated as a hotel, and that immediate and irreparable injury may result in the event a receiver is not appointed.

Based on the foregoing **FINDINGS**, the Court therefore **GRANTS** the relief requested in the Motion by entering a default judgment against Defendants and appointing a receiver.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the current holder of certain promissory notes, security instruments, and other loan documents (collectively the "Loan Documents") evidencing that in 2018, Defendants collectively borrowed $149,400,000.00 (the "Loan") from the original lenders that were Plaintiff's predecessors-in-interest.  Compl. ¶ 21.  Each of the seven Defendants, which are corporate affiliates, separately owns real property and personal property (collectively the "Hotels" or the "Properties") located in four states, with each location being operated as a Marriott-branded hotel (e.g., as a Marriott Courtyard, a Residence Inn, or a SpringHill Suites).  *Id.* ¶ 5, 7, 9, 11, 13, 15, and 17.

Each security instrument grants the lender a security interest in the collateral securing each Defendant's financial obligations; such collateral consists of (1) the real property and improvements comprising each Hotel, (2) each Hotel's personal property, including its books and records, and (3) the revenues from each Hotel's operations.  *Id.* ¶ 23-24.  In the event of default, the Loan Documents, including the security instruments, authorize Plaintiff as the current holder of the notes to seek the appointment of a receiver to take possession of the assets.  *Id.* ¶ 44.

The Loan matured in July 2023.  *Id.* ¶ 30.  Defendants defaulted on the Loan by failing to pay the outstanding balance at maturity.  *Id.*  Defendants have not paid the outstanding balance as of

this letter and remain in default.  Because the Loan is non-recourse, Plaintiff's remedy is limited to the value of the collateral securing the Loan.  *Id.* ¶ 47.

Consistent with its rights under the Loan Documents, Plaintiff filed this lawsuit on November 13, 2023, ECF 1, and served each Defendant's registered agent as designated in the Loan Agreement with process on November 22, 2023.  ECF 20-26.  Defendants failed to answer or otherwise respond to the Complaint within 21 days of service of the summons as required by Rule 12 of the Federal Rules of Civil Procedure.  To this date, no Defendant has responded in any manner to Plaintiff's complaint.

The Clerk of this Court entered the Defendants' default on the record and issued the required certification of default in accordance with Local Rule 55.2.

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure "sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment."  *Sec. & Exch. Comm'n v. Rinfret*, No. 19-CV-6037 (AJN), 2020 WL 6559411, at *2 (S.D.N.Y. Nov. 9, 2020).  The first step requires the clerk to enter a default upon notice that a defendant has failed to plead or otherwise defend against a plaintiff's complaint within 21 days of service.  Fed. R. Civ. P. 55(a); *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund et al. v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015).  This step "simply 'formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff.'"  *Rinfret*, No. 19-CV-6037 (AJN), 2020 WL 6559411, at *2 (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)).

"The second step, entry of a default judgment, 'converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the

court decides it is entitled, to the extent permitted' by the pleadings." *Id.* (quoting *Mickalis Pawn Shop*, 645 F.3d at 128).

In connection with requesting that the Clerk enter default on the record, Plaintiff has demonstrated that each Defendant was served with process. *See Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54 (2d Cir. 2017) (stating that a plaintiff must show that the defendant was effectively served with process). Here, Plaintiff served each Defendant's registered agent in New York (as noted in the Loan Documents) with process on November 22, 2023. ECF 20-26. Defendants' deadline to respond to the complaint was December 13, 2023.

## I.    By Defaulting, Defendants Have Admitted the Well-Pleaded Allegations of the Complaint, Including the Allegations of Plaintiff's Breach-of-Contract Claim.

"[A] default judgment deems all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997); *see also Discover Growth Fund, LLC v. OWC Pharm. Rsch. Corp.*, No. 20 CIV. 2857 (AKH), 2023 WL 3301837, at *3 (S.D.N.Y. May 8, 2023). Based on Plaintiff's factual allegations in the Complaint, entry of a default judgment is proper on Plaintiff's claim for breach of contract, and the appointment of receiver is also proper. *Rinfret*, No. 19-CV-6037 (AJN), 2020 WL 6559411, at *2 ("entry of a default judgment, 'converts [a] defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted' by the pleadings").

Under New York law, a claim for breach of contract consists of the following four elements: (1) the existence of a valid contract; (2) Plaintiff's performance of the contract; (3) Defendants' material breach of the contract; and (4) resulting damages. *See, e.g., FaZe Clan Inc. v. Tenney*, 467 F. Supp. 3d 180, 189 (S.D.N.Y. 2020) (listing elements); *Noise in the Attic Prods., Inc. v. London Records*, 10 A.D.3d 303, 782 N.Y.S.2d 1 (1st Dep't 2004). Defendants have admitted the foregoing

allegations in Plaintiff's Complaint.  Paragraphs 20-29 of the Complaint allege the existence of a valid contract.  Compl. ¶¶ 20-29.  Plaintiff's predecessor performed its obligations under the contract at issue by lending Defendants the funds at issue.  *Id.* ¶¶ 20-24.  Defendants breached the Loan Documents by failing to repay all amounts owed at maturity.  *Id.* ¶ 30.  Plaintiff has incurred damages as a result of Defendants' breach.  *Id.* ¶ 32.

Based upon the foregoing, this Court **GRANTS** Plaintiff's motion for default judgment and enters judgment in favor of Plaintiff and against Defendants on all counts of the Complaint.

## II.    The Court GRANTS Plaintiff's Motion for the Appointment of Receiver and Appoints a Receiver Subject to the Terms of this Order.

### A.    Standards for Appointing a Receiver

The Federal Rules of Civil Procedure "govern an action in which the appointment of a receiver is sought . . . [b]ut the practice in administering an estate by a receiver . . . must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66.  Under federal law, this Court may appoint a receiver "in any civil action . . . involving property, real, personal, or mixed, situated in different districts . . . [and] vest[] [such receiver] with complete jurisdiction and control of all such property with the right to take [immediate] possession thereof." 28 U.S.C. § 754.  The express terms of the Loan Documents authorize Plaintiff to "apply for the appointment of a receiver, trustee, liquidator, or conservator of the Property [securing the Loan], without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower[s] or any other Person liable for the payment of the Debt."  Hunerdosse Decl. ¶ 24 (citing Compl., Ex. 5, Ashford Phoenix LP Deed of Trust, § 8.1(g)).

"[T]he existence of a provision authorizing the application for a receiver in the event of a default, 'strongly supports the appointment of a receiver' when there is a default."  *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 250 (S.D.N.Y. 2012) (citing *Citibank, N.A.*

*v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97-98 (2d Cir. 1988) (citing *Mancuso v. Kambourelis*, 72 A.D.2d 636, 637, 421 N.Y.S.2d 130, 131 (3d Dep't 1979)).

Several factors support Plaintiff's request for a receiver.  In determining whether the appointment of a receiver is warranted, federal courts will also consider, *inter alia*, the following factors:

> Fraudulent conduct on the part of defendant; ***the imminent danger of the property being*** lost, concealed, injured, ***diminished in value***, or squandered; ***the inadequacy of the available legal remedies***; ***the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment***; and, in more general terms, ***plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property***.

*U.S. Bank Nat'l Ass'n*, 866 F. Supp. 2d at 249-50 (emphasis added) (granting motion to appoint receiver and citing factors) (quoting *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (quoting 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (1999) (internal alterations omitted)).  The emphasized factors also weigh in favor of the appointment of a receiver of the Properties.  For example, Plaintiff has introduced the declaration of Hunerdosse, which among other things, avers that the Loan is generally a non-recourse obligation and because the value of the Hotels is greater as entities operating in compliance with their franchise agreements with Marriott.

Hunerdosse's declaration and the allegations of the Complaint also show that in the absence of an appointed receiver, is that the value of its collateral—which currently appears to be the only recourse for Plaintiff—will be significantly impaired without the intervention of a receiver. Hunerdosse Decl. ¶ 27-28, 30.

## B.    Terms of Receivership

Based on the foregoing, IT IS HEREBY ORDERED that Jeffrey Kolessar ("Kolessar") of GF Hotels & Resorts, with a business address at 1628 John F. Kennedy Boulevard, 23rd Floor, Philadelphia,

PA 19103 (the "<u>Receiver</u>"), be and hereby is appointed as the receiver of Defendants' Assets (as defined herein), specifically including, but not limited to, the Premises (as defined herein) and more particularly described in the Complaint.

IT IS FURTHER ORDERED that:

1.     The Receiver shall take immediate possession of, hold, secure, take charge of, preserve and protect, to the exclusion of all others, the following assets and property of the Defendants (collectively, "<u>Defendants' Assets</u>"): (Defendants' Assets shall exclude assets and property at or used at the Premises that are the property and assets owned by Marriott International, Inc., its Affiliates, <u>MIF, L.L.C., Courtyard Management Corporation, Residence Inn by Marriott, LLC and Townplace Management Corporation</u> (collectively, the "Marriott Parties") pursuant to the terms of the agreements establishing Defendants' rights and obligations to operate the Franchised Premises as a branded hotel (collectively, the "Franchise Agreements" and Management Agreements:

a.     Certain real property and improvements and personal property thereon as follows:

| Defendants | Property Address | Hotel Name | Operation Type |
|---|---|---|---|
| Ashford Newark LP | 34905 Newark Boulevard Newark, CA 94560 | Courtyard by Marriott Silicon Valley | Franchised |
| Ashford BWI Airport LP | 899 Elkridge Landing Road Linthicum Heights, MD 21090 | SpringHill Suites by Marriott Baltimore | Franchised |
| Ashford Oakland LP | 350 Hegenberger Road Oakland, CA 94621 | Courtyard by Marriott Oakland | Franchised |
| Ashford Plano-C LP | 6840 Dallas Parkway Plano, TX 75024 | Courtyard Dallas Plano in Legacy Park | Managed |
| Ashford Plano-R LP | 5001 Whitestone Lane Plano, TX 75024 | Residence Inn Dallas Plano/Legacy | Managed |
|  | 14400 Aviation Boulevard |  | Managed |

| Ashford Manhattan Beach LP | Hawthorne, CA  90250 | TownePlace Suites Los Angeles LAX/Manhattan Beach | |
| Ashford Basking Ridge LP | 595 Martinsville Road Basking Ridge, NJ 07920 | Courtyard Inn by Marriott Basking Ridge | Managed |

Each property is more particularly described in the attached Exhibit 1 (collectively, the "Premises"); each property with the Operation Type "Franchised" per the chart above and as more particularly described in the attached Exhibit 1 (collectively, the "Franchised Premises"); and each property with the Operation Type "Managed" per the chart above and as more particularly described in the attached Exhibit 1 (collectively, the "Managed Premises").

b.       All documents, ledgers, journals, reports, instruments, agreements, security and access codes, combinations, merchant credit card machines and access numbers to them, the current lists of tenants (if any), tenant ledgers, tenant files, tenant histories, records pertaining to occupancy (including, without limitation, all guest/occupant ledgers, reservation reports, credit card billings, occupancy tax records, and all property tax or occupancy tax identification numbers), cash receipts journals, guest/transient bookings, banquet/facility bookings, information and materials belonging to any of the respective Defendants, whether in Defendants' or their agents' possession or control relating to the ownership, maintenance, repair, replacement, improvement, management, leasing, insuring, tax appeal, marketing, financing, use, operation, preservation and protection of the Premises and the other Defendants' Assets, and all other Property (as defined in the Security Instruments (as defined in the Complaint) (collectively, the "Project Records");

c.       All cash, letters of credit, checking, savings, depository, payroll, vendor, petty cash or other accounts relating to the Premises and held by or for the benefit of Defendants (collectively, the "Project Accounts");

d.       All payments, revenues, refunds and other income from, relating to or derived from the Premises (collectively, the "Project Income");

e.       All security, utility, prepayments, and other deposits received by Defendants and/or their respective agents (acting as agents for the Defendants) and any deposits made by any Defendants to any lessor, utility provider or other service provider, in each case in connection with the ownership, operation, repair or use of the Premises (collectively the "Project Deposits");

f.       All information systems and technology of any kind, including access thereto, that Defendants or their respective agents maintain or utilize for the benefit of Defendants or relating to the Premises (collectively, the "Information Technology"); and

g.       The originals of all leases, subleases, licenses (including, without limitation, all liquor licenses, but excluding the Franchise Agreements), vehicle titles and any other

agreements in possession or control of Defendants or their agents (acting as agents of Defendants) relating to the use of occupancy of the Premises (collectively, the "Leases").

2.      Subject to execution of the New Franchise Agreements (as defined in paragraph 12), Receiver is hereby empowered to continue the management, operation, and maintenance of the Franchise Premises as set forth herein and shall exercise all powers necessary to facilitate the operation of the Franchise Premises.  Receiver is hereby empowered to continue role of "Owner" under the Management Agreement and shall exercise all powers available to "Owner" under the Management Agreements necessary to facilitate the operation of the Managed Premises.

3.      Receiver is hereby authorized to, but need not, delegate some or all of its authority under this Order to (and to engage and compensate) one or more property management firms, including without limitation the firms currently managing the Premises, subject to Plaintiff's approval.  Upon the approval of Plaintiff of the reasonable fees and expenses of such property management firms, the Receiver shall be authorized to pay such fees as Project Expenses.  Subject to Plaintiff's approval, Receiver shall have the right to terminate such delegation to or the engagement of the current property management firms or any other property management firms it engages at the Franchise Premises and such management agreements, including, without limitation, the BWI Airport Management Agreement, Newwark Management Agreement and Oakland Management Agreement; however, Receiver shall not have such authority under the Managed Premises.  Receiver shall be empowered to enforce any rights and remedies against any such property management firms, at law or in equity, either in its own name or as though the Receiver were standing in the place of Defendants.

4.      Defendants, their respective agents, employees, members, managers, officers and representatives, any parties managing any portion of the Franchised Premises and any and all other contractors, persons and entities retained, hired or engaged by any Defendant to provide

goods or services at the Franchised Premises (collectively, the "Defendant Parties") [Marriott is not a defendant party] are hereby ordered (a) to immediately surrender possession and control of Premises to the Receiver; and (b) to immediately surrender possession and control of all other Defendants' Assets in their possession or control, specifically including, without limitation, (i) all Project Records, (ii) all Project Documents; (iii) all Project Accounts, (iv) all Project Deposits, (v) all Project Income, (vi) all Information Technology (vii) the originals of all Leases; (viii) the originals of all other contracts and agreements relating the Premises, (x) the originals of all liquor licenses relating to the Premises and (xi) all other Property, to the Receiver.   The Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage Defendants' Assets, including the Premises, to receive all Project Income and Project Deposits, and to execute any documents, instruments and agreements to allow the Receiver to take possession of and control and to draw checks on any and all Project Accounts. All such documents shall be submitted to the Receiver within five (5) business days of the date of this Order.  Subject to paragraph 5 of this Order, any future income related to the Premises shall be turned over to the Receiver immediately upon receipt. The Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage Defendants' Assets, including, without limitation, the Premises, to receive all Project Income and Project Deposits, and to execute any documents, instruments and agreements to allow the Receiver to take possession of and control and to draw checks on any and all Project Accounts.

5.     Notwithstanding anything in this Order to the contrary, the rents, profits, license, fees, etc. shall continue to be deposited, managed and disbursed in accordance with the terms of the Cash Management Agreement, dated as of June 13, 2018, executed by Defendants  in connection with the Loan (as defined in Exhibit 3), and currently held by Plaintiff. Receiver

is hereby authorized to establish one or more operating bank accounts to receive funds from the Cash Management Account (as defined in the Cash Management Agreement).  Receiver may request the release of funds from the Cash Management Account, which funds shall then be applied as required by paragraph 15.

6.      Subject to paragraph 15 of this Order, all funds in any account maintained by the Receiver pursuant to this Order shall remain collateral for the Loan pursuant to the Loan Documents and shall be paid to Plaintiff upon the earliest to occur of (i) the consummation of the judicial or non-judicial foreclosure and sale of all of the Premises (or a combination thereof with Paragraph 6(ii) herein); (ii) the consummation of and conveyance of the all Premises by Deeds-in-Lieu of Foreclosure (or a combination thereof with Paragraph 6(i) herein); (iii) payment of the Loan in full; (iv) a final judgment of this Court is entered terminating the receivership created by this Order; (v) the consummation of a sale or sales of all of the Premises pursuant to further order of this Court; (vi) the written request of Plaintiff that is so-ordered by this Court; (vii) the written request of the Receiver (made with written consent from Plaintiff) that is so-ordered by this Court; or (viii) further order of this Court.

7.      The Receiver is authorized to serve this Order on any of the financial institutions that maintain any Project Accounts, and all such financial institutions and any other persons in active concert or participation with Defendants are authorized to take such steps as are necessary to restrain or prevent Defendant Parties from withdrawing, disbursing, distributing or causing the diversion of any funds, cash, income, deposits in any Project Accounts and are authorized to immediately turn over all funds in any Project Accounts to the Receiver.  Any financial institution maintaining Project Accounts is authorized to provide to the Receiver a complete listing of account numbers under the name of Defendants, including accounts previously closed.  For each such

Project Account the financial institution is authorized to provide the current balance for such account and upon request by the Receiver is authorized to provide monthly bank statements (and details of any such transactions as requested) for a period of up to one (1) year prior to entry of this Order.

8.      Defendants and any Defendant Parties charged with operating and/or managing the Premises are hereby directed to deliver to the Receiver and Plaintiff within five (5) days after the date of this Order:

      a.      an accounting of all Project Income, all Project Expenses, whether paid with Project Income or by Defendants for the benefit of the Premises, all Project Accounts and all Project Deposits for the period beginning from and after January 1, 2023 to the date of this Order;

      b.      monthly operating statements prepared for each calendar month for the months of January 2023 through and including the present month, and year-to-date operating statements, each of which shall include an itemization of actual (not pro forma) capital expenditures during the applicable period and each of which shall also be certified true and correct by Defendants or other Defendant Parties charged with operating the Premises;

      c.      all Project Income generated by the Premises from and after January 2023 in their possession, custody or control, to the date of this Order which was not applied to the standard and customary operating expenses of the Premises or delivered to the Plaintiff;

      d.      all Sales Tax Identification Numbers, log-ins and copies of filed returns from and after January 1, 2023; and

      e.      an itemization of all unpaid bills, a list of any and all liens, mechanics liens, or similar, filed against any of the Premises, and any other amounts due and payable relating to the Premises, together with all bills, invoices and other writings evidencing or relating thereto, which unpaid bills and other amounts due shall remain the sole obligation and responsibility of Defendants and/or Defendants' management company, and Defendants' tax identification numbers.

      The Receiver shall not be responsible for payment of any expenses (including, without limitation, for services, build-outs, or any other construction), utility bills (including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone) and unpaid payroll expenses incurred by, or for the benefit of, the Premises prior to the Receiver's taking possession of the Premises. Defendants shall request that all utilities companies and other providers of utility services, including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone not discontinue any

services being provided to the Premises. Each utility company or entity providing service to the Premises is authorized to forthwith transfer any deposits which it holds in connection with the Premises to the exclusive control of Receiver. The Receiver is authorized to open new customer accounts with each utility that provides services to the Premises, or require Defendants to name Receiver as an authorized user of any of the existing utility accounts for the Premises. Each utility company is barred from interrupting service due to pre-receivership liabilities.

9.      The Receiver is authorized and directed to demand, collect and receive from the Premises all amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder.  Anyone who owes such amounts is authorized to pay them to the Receiver.

10.      The Receiver is hereby authorized and directed to make, cancel, terminate, enforce, or modify contracts, leases, or licenses as they relate to the Franchised Premises (as stated in paragraph 28) as the Receiver may determine in its sole judgment is necessary with no further obligation or liability including not having to pay any termination fees under any terminated contract or agreement.  No required consent of Plaintiff, nor any other provision of this Order shall render or cause, or shall be deemed to render or cause, Plaintiff to be a mortgagee in possession of the Premises or otherwise subject Plaintiff to any liability under the Loan Documents or otherwise.  The Receiver shall operate and manage the Franchised Premises in a reasonable manner in accordance with all contractual obligations, including, without limitation, the New Franchise Agreements and otherwise in accordance with applicable state, local, and federal laws.

11.      Receiver may offer employment to existing employees working at the Premises of Defendants or related parties (including any management companies engaged by Defendants) to continue any business operations, or in the alternative hire all employees as those of any management company or other entity hired by Receiver. Defendants or any management companies engaged by Defendants (as appropriate) will be solely and exclusively responsible for (i) any claims or liabilities that arose prior to the appointment of Receiver that are in any way related to an employee's employment with or separation from Defendants or any management

companies engaged by Defendants, including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans, and (ii) liabilities existing prior to Receiver's appointment related to the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. § 2101, *et seq.*, and liabilities existing prior to Receiver's appointment related to the Consolidated Omnibus Budget Reconciliation Act (COBRA), or similar state statutes or regulations.   Receiver and property management companies it engages shall be solely and exclusively responsible for any of the items identified in the preceding sentence that arise during the tenure of Receiver.   All pre-receivership liabilities for which Defendants and/or any management companies engaged by Defendants bear responsibility will not be carried and reported as those of the receivership estate.

12.     With respect to the Hotels subject to a Franchise Agreement with Marriott International, Inc. or MIF, L.L.C. (collectively, "Marriott"), the Receiver has the right to enter into a form franchise agreement (each a "New Franchise Agreement") with Marriott in form and substance satisfactory to the Receiver and Marriott, and to have the applicable Hotel operated in accordance with the terms of a New Franchise Agreement by a third-party management company approved by Marriott in accordance with the terms thereof.   The obligations of the Receiver shall be to insure that the Hotel is operated in accordance with state, local and federal laws, and maintained in accordance with the Standards required by a New Franchise Agreement, and that both past due payments and those that come due under a New Franchise Agreement during the receivership shall be promptly paid to Marriott as on-going operating expense ahead of those payments due to the Receiver and Plaintiff.   In the event there are insufficient funds from the operation of the Hotel to pay all amounts due to Marriott or its affiliates under a New Franchise Agreement (or related thereto), Plaintiff shall fund such amounts due to Marriott as a protective

advance under the Loan.  In the event the Receiver fails to comply with the terms of a New Franchise Agreement and cure any defaults that may be cured under the terms of such New Franchise Agreement, Marriott shall have the absolute right to terminate such New Franchise Agreement consistent with its terms, immediately on written notice to the Receiver.   The Receiver shall have the right to expend and disburse funds for payment to Marriott for amounts due from time to time under the New Franchise Agreements without the approval of Plaintiff.

13.     The Receiver is hereby authorized and directed to lease, rent and license the Premises on such terms and conditions as may be approved in writing by Plaintiff.

14.     The Receiver is authorized and directed (a) to deposit or cause to be deposited all Project Income and all other funds and monies received by it pursuant to this Order into the Cash Management Account in accordance with paragraph 5 above; and (b) to make available by electronic means or by means as otherwise determined by the Receiver and as allowed under this Order copies of the monthly bank statements relating to such accounts for the parties' review and inspection.

15.     Subject to anything set forth in the Loan Documents to the contrary, and subject to the provisions of paragraph 12 above, the Receiver is authorized and directed to use the Project Income, and all other funds and monies coming into the Receiver's hands pursuant to this Order (including disbursements of funds to Receiver from the Cash Management Account but excluding Project Deposits) as follows:

> a.       first, to the payment of any real estate taxes and insurance premiums for the Premises;

> b.       second, to payment of the Receiver's fees as set forth in Exhibit 4 attached hereto and incorporated herein;

> c.       third, to the payment of all currently payable Hotel employee payroll expenses;

d.    <u>fourth</u>, to the reasonable out-of-pocket third-party costs and expenses incurred by the Receiver in the ordinary course of the performance of the Receiver's duties in accordance with this Order;

e.    <u>fifth</u>, to the payment of all monthly Project Expenses, other than those paid pursuant to paragraph 15(a) and 15(c) above, arising, in each case, from and after the date of this Order and being reasonably necessary to hold, retain, manage, lease, operate, use, preserve and protect Defendants' Assets in accordance with this Order, <u>provided</u>, however, that the Receiver shall not expend in excess of $25,000.00 for any single repair, replacement or capital improvement without the prior written  approval of Plaintiff, and <u>provided further</u>, however, that the Receiver may, only upon the prior written approval of Plaintiff, use Project Income to pay Project Expenses arising prior to the date of this Order; and

f.    <u>last</u>, on or before the twentieth (20th) day of each calendar month after the date of this Order, all remaining Project Income, funds and monies (collectively, "<u>Excess Funds</u>") to Plaintiff for application against the outstanding expenses, costs, interest, principal, fees and other amounts owed by Defendants under the Loan Documents, with such Excess Funds to be applied by Plaintiff in such order and manner in Plaintiff's sole discretion.

16.    If the Receiver (i) determines at any time, and from time to time, that the amount of Project Income then in the possession of the Receiver, or which the Receiver anticipates will be in the possession of the Receiver when required, is insufficient to pay any expenses described in paragraphs 15(a) through 15(e) of this Order, or (ii) receives bills for Project Expenses pertaining to periods that precede the date of this Order, then the Receiver shall promptly notify Plaintiff thereof and of the amount of such deficit or such bills, whereupon Plaintiff shall have the right, but not the obligation, to (a) release additional funds from the Cash Management Account to satisfy such deficit, or (b) if there are insufficient funds in Cash Management Account to satisfy such deficit, advance to the Receiver funds to pay all or any portion of such deficit or permit Receiver to pay such bills. Any funds advanced by Plaintiff pursuant to this paragraph (i) shall be repaid as an expense of the Receiver if advanced directly by the Receiver in accordance with paragraph 15(b) of this Order, and (ii) to the extent advanced by Plaintiff, shall be deemed an advance to Defendants under the Loan Documents for the protection and preservation of the Premises and the other Defendants' Assets, shall be added to the outstanding principal amount of

the Loan and shall be secured by the mortgage, security title, security interest, lien and/or encumbrance of the Security Instruments and the Loan Documents, and no such amount advanced by Plaintiff shall render or shall be deemed to render Plaintiff a mortgagee in possession of the Premises or otherwise subject Plaintiff to any liability to Defendants under the Loan Documents or otherwise.

17.    The Receiver is authorized to institute, carry on and maintain all actions, suits, proceedings and procedures necessary (a) for the proper management, operation, preservation and protection of the Premises and the other Defendants' Assets or to gain or recover possession of all or any part thereof; (b) for collection of any Project Income now due or hereafter to become due or fixed; and (c) for the removal of any person unlawfully possessing, occupying or using any part of the Premises.

18.    The Receiver is authorized to, in accordance with and subject to applicable law, (a) continue to utilize Defendants' or their respective affiliates' liquor licenses attributable to the Premises and/or (b) transfer such liquor licenses into the Receiver's name.  Defendants and/or their affiliates shall cooperate in the transfer of the liquor licenses, shall execute and deliver such documentation and certificates as are necessary or required to operate, and/or transfer the liquor licenses, and shall not engage in acts whatsoever that would interfere with the operation or transfer thereof.

19.    The Receiver is authorized to prepare and file sales, beverage, and occupancy tax returns with respect to the Property, as may be required by law; provided, however, Receiver is not responsible for the preparation of or filing of any state or federal income tax returns for Defendants or any of their affiliates and shall not be responsible for paying any unpaid federal or state taxes on behalf of Defendants;  Receiver shall be entitled to obtain new Tax Identification

Numbers.  The Receiver is authorized to use the tax identification number of Defendants with respect to the Premises for any lawful purpose.

20.     Defendants shall provide Receiver with its federal employment identification numbers for the Receiver's use on a limited basis as necessary.

21.     Notwithstanding any other provision hereof, the Receiver shall be under no obligation to complete or file tax returns on behalf of Defendants for income or other taxes arising before the date of this Order, Receiver and the receivership estate shall not be liable for the payment of taxes of any kind, assessments, goods or services provided to Defendants for the Premises prior to the date of this Order.

22.     On or before the thirtieth (30th) day of each calendar month, the Receiver shall provide by electronic means or by means otherwise determined by the Receiver and as allowed under this Order monthly financial reports for the immediately preceding month to Plaintiff and Defendant concerning the operations, income and expenses of the Premises.

23.     Upon written request by Plaintiff, the Receiver is authorized to (a) order appraisals for the Premises; (b) list or otherwise advertise all or a portion of the Premises for sale with a brokerage firm approved by Plaintiff on terms and conditions approved by Plaintiff; (c) solicit offers to purchase all or a portion of the Premises; (d) provide promptly to Plaintiff and Defendants copies of all such offers; and, (e) enter into purchase and sale agreements in connection with the sale of all or a portion of the Premises.  Plaintiff shall be permitted, from time to time, to contact such brokerage firm and any party or parties which may have an interest in purchasing the Premises or which have made any proposal to purchase the Premises and to discuss and negotiate the terms of such offer provided that Plaintiff shall report the nature and content of such discussions and negotiations to the Receiver periodically, and no such contact, discussion or negotiation with such

party or parties shall render or cause or shall be deemed to render or cause Plaintiff to be a mortgagee in possession of the Premises or otherwise subject Plaintiff to any liability under the Loan Documents or otherwise.  Upon request by Plaintiff, the Receiver shall, or Plaintiff itself may, file a motion (and seek a hearing on an expedited or emergency basis on such motion) for permission to sell the Premises.  Any response or opposition to such motion must be filed within ten (10) days after the motion is filed. Plaintiff and Defendants agree that the Court may rule on the motion and supporting documents without conducting a hearing. If the Court determines that appropriate circumstances exist for selling all or a portion of the Premises, the Court may enter an order authorizing and directing the Receiver to sell the Premises and Defendants' Assets on the terms set forth in the Court's order, or as are acceptable and approved in writing prior to such sale by Plaintiff if there is no opposition to the motion.  The Premises and Defendants' Assets may be sold by way of public or private sale or other disposition free and clear of all security interests, liens, claims and other interests, all valid security interests, liens, claims, and other interests, if any, shall attach to the proceeds of such sale(s). The Receiver shall be authorized to execute any documentation on behalf of the applicable Defendants as attorney-in-fact to effectuate such sale(s).

24.     In connection with any sale of the Premises by the Receiver in accordance with this Order, Plaintiff shall have the right, but not the obligation, in its sole discretion, to permit a purchaser of the Premises to assume the Loan and to make any modifications to the Loan to which Plaintiff agrees in writing (including, without limitation, the extension of the Loan maturity date, change in the interest rate, a reduction of the outstanding principal balance of the Loan and changes to the reserves and escrows for the Loan).  The Receiver is hereby authorized and directed to execute any documentation on behalf of Defendant as its attorney-in-fact to effectuate such

assumption and modification of the Loan, so long as such modifications do not increase the indebtedness and other amounts owed by Defendants under the Loan Documents.

25.     The Receiver is authorized to engage and compensate any assistants, professionals, independent contracts, accountants, and attorneys, as needed in the reasonable discretion of the Receiver, to advise the Receiver with regard to financial and legal matters relating to Defendants' Assets, to prepare financial statements and reports required under this Order, to initiate, carry on and maintain such actions, suits and proceedings for and on behalf of the Receiver and as may be necessary for the Receiver to carry out its duties and responsibilities under this Order and as otherwise may be reasonably required by the Receiver.  However, Receiver's employment of any attorneys in addition to AHP Law Group LLC and Holland and Knight LLP are subject to Plaintiff's approval.   Upon the approval of Plaintiff of the reasonable fees and expenses of such attorneys, the Receiver shall be authorized to pay such fees and expenses as Project Expenses.

26.     Within ten (10) business days after the date of this Order, the Receiver is authorized and directed to procure and maintain in full force and effect, and to pay the premiums for, insurance policies relating to the Premises with such types of coverages, in such amounts and issued by such companies as are specified in the Loan Documents.   Each such insurance policy obtained by the Receiver shall name the Receiver, Defendants and Plaintiff as named insureds and Plaintiff as loss payee.  Defendants and their agents shall deliver copies of the existing insurance policies to the Receiver and are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Premises that are in effect as of the date of this Order until the Receiver notifies Defendants and Plaintiff that the Receiver has obtained insurance for the Premises in accordance with this Order.   Any refunds of pre-paid insurance premiums received by any Defendant or its agents upon the cancellation of their insurance coverage for the Premises

is Project Income that shall be immediately remitted by Defendants to the Receiver.   Defendants and their respective agents are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Premises that is in effect as of the date of this Order without the consent of the Receiver.

27.     Defendants and their agents shall promptly provide their tax identification numbers and any other information requested by the Receiver in order to carry about the Receiver's duties under this order.

28.     The Receiver is authorized to execute any documents, instruments, contracts, purchase orders and agreements from time to time necessary to permit the Receiver to obtain possession of and to control, use, operate, maintain, improve, manage, lease, insure, market, preserve and protect the Premises and the other Defendants' Assets and otherwise to carry out the Receiver's obligations under this Order.

29.     In holding, retaining, managing, operating, preserving and protecting the Defendants' Assets, the Receiver shall not be bound by or otherwise subject to any existing management agreement, any real estate listing, brokerage, sales or leasing agreement or any other obligation contract or agreement, other than the Leases, existing as of the date of this Order which relates to the ownership, use, leasing, management, maintenance, repair, preservation or operation of the Premises and the other Defendants' Assets.  Subject to Plaintiff's prior written approval, Receiver shall have the authority to reject all preexisting contracts and leases, renew or modify existing contracts and enter into new contracts in the name of the applicable Defendant.

30.     During the pendency of this action, the Defendant Parties and all persons acting in concert with any of the foregoing are hereby enjoined and restrained: (a) from collecting any Project Income; (b) from taking possession of any part of the Premises or any of the other

Defendants' Assets; (c) from entering into any Lease or renewing, extending, modifying, amending in any way or terminating any Lease; and (d) from intentionally hindering or interfering with in any way the performance of the Receiver's obligations, duties and instructions hereunder or with the Premises or any of the other Defendants' Assets or the Receiver's possession and control thereof.

31.     The Defendant Parties, and all persons and entities acting in concert with any of them (a) shall promptly deliver to the Receiver any and all mail, notices and other written communications and shall promptly notify the Receiver of any oral notices or communications in any way relating to the Premises or the other Defendants' Assets which are received by such party on and after the date of this Order; and (b) shall cooperate, in good faith and with due diligence, with the Receiver in, among other things, transferring utilities and other services provided to the Premises out of the Defendants' name and into that of the Receiver (if the Receiver so requests), and carrying out such other terms and purposes of this Order, and if and when requested by the Receiver, shall acknowledge and confirm to persons or entities designated by the Receiver the authority of the Receiver under this Order to take possession of, hold, secure, take charge of, manage, lease, operate, preserve and protect the Premises and the other Defendants' Assets, specifically including, without limitation, the Project Income, the Project Accounts and the Project Deposits.

32.     Notwithstanding anything in this Order to the contrary, (a) to the extent Receiver intends to take any action (including any actions authorized by this Order) which is an action which requires the consent of Plaintiff under the Loan Documents if such action was to be taken by a Defendant, then Receiver shall be required to obtain such consent from Plaintiff in accordance with the terms and provisions of the Loan Documents prior to taking any such action and no action

of Receiver which requires such consent shall be authorized under this Order unless Receiver first obtains such consent, and (b) Plaintiff is hereby permitted to proceed with and exercise any and all available rights and remedies under the Loan Documents, including, without limitation, exercising its rights as holder of security title to Defendants' Assets and as a secured creditor under the Loan Documents, under Article Nine of the Uniform Commercial Code in effect in the applicable jurisdiction or under other applicable law governing such rights, by judicial or non-judicial foreclosure, power of sale or as otherwise provided under the Loan Documents, should Plaintiff so elect. Plaintiff shall notify the Receiver of any such sale or other exercise of Plaintiff's rights and/or remedies, and the Receiver shall cooperate with Plaintiff in the consummation of any such action or actions, including, without limitation, execution of such deeds, bills of sale and other documents, instruments and agreements provided that none of such documents, instruments or agreements subject the Receiver to any personal liability.

33.     The liability of Receiver is and shall be limited to the assets of the receivership and Receiver shall not be personally liable for any actions taken pursuant to this Order except for his gross negligence or malfeasance.  Neither Receiver nor Plaintiff shall be personally liable for any pre-receivership expenses or any actions taken by Defendants, its agents, employees and any management companies engaged by Defendants, before, during or after the receivership.  No person or entity, including any governmental entity, shall file suit against Receiver, or take other action against Receiver, regarding anything related to the Premises or Receiver's action or inaction as Receiver, without an order of the Court permitting the suit or action; provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of the Court in this action.

34.     If and when judicial or non-judicial foreclosure proceedings against the entire

Premises shall have been consummated, or upon the consummation and conveyance of the entire Premises pursuant to a Deed-in-Lieu of Foreclosure, or upon the sale of the entire Premises pursuant to a further order or orders of this court, or upon payment of the Loan in full, and without further order of this Court, the Receiver shall within thirty (30) days of such occurrence move the Court to be discharged and relieved from this Order and shall render a final report to the Court, to Plaintiff and to Defendants concerning the operations of Defendants' Assets. The parties shall file any objections to the motion and report within fifteen (15) days of the filing of such documents. This Court expressly retains continuing jurisdiction over this receivership until after the rendition of the final report by the Receiver and the entry of an order discharging the Receiver. Without limiting the foregoing, Plaintiff and the Receiver have the right to seek the termination of the Receiver upon written request to the Court, without filing a motion, which shall be effective when so-ordered by the Court. Upon the Court so-ordering such a request, the Receiver shall within 45 days render a final report to the Court, to Plaintiff and to Defendants concerning the operations of Defendants' Assets. In consideration of Receiver's preparation of a final accounting and Receiver's cooperation in connection with any transition of management of the Premises to an unrelated party, the Receiver shall be compensated according to the fee schedules set forth in Exhibit 3 at the conclusion of the Receivership. The parties shall file any objections to the motion and report within fifteen (15) days of the filing of such documents.

35.     Upon Receiver's discharge, Receiver shall be entitled to retain sufficient funds to pay any outstanding expenses that Receiver has incurred on behalf of the Premises that are authorized by this Order.

36.     The Receiver shall permit Plaintiff, and its agents and independent contractors, to inspect the Premises and the Project Documents.

37.     The Receiver may obtain, use and operate under the Franchise Agreements and under any and all Leases currently in effect for the Premises. The Receiver may communicate with, negotiate with and enter into new or any amendment of any lease, license or franchise agreement relating to the Premises, including, without limitation, the Franchise Agreements and any related comfort or third party letter agreements as they may relate to the Loan and the Loan Documents, provided that any such new agreements or amendments shall be subject to the prior written approval of Plaintiff in Plaintiff's sole and absolute discretion. The Receiver is hereby authorized and directed, without further order of this Court, in connection with the same, to execute any documentation on behalf of Defendants as their attorney-in-fact to effectuate any such new or amendment of any license or franchise agreement relating to the Premises, and any related comfort or third-party letter agreements as they may relate to the Loan and the Loan Documents. The Receiver may cure any existing defaults under the existing Franchise Agreements as may be required under the terms of the comfort letters issued to Plaintiff by Marriott for such Hotels. The Receiver shall not be obligated to pay termination fees or liquidated damages under the existing Franchise Agreements.

38.     The Receiver is required to submit proof of receiver's bond with the Clerk of this Court in the amount of $50,000.00 (the "Bond") within ten (10) business days of this Order. Upon the Receiver's submission of proof of Bond, the Receiver shall be authorized and empowered to perform its duties under this Order, including taking control of Defendants' Assets. The cost of the Bond shall be an expense of the receivership estate, and Receiver shall be entitled to reimburse himself for the cost associated with obtaining the Bond.

39.     In addition to the powers and instructions expressly set forth in this Order, the Receiver shall have all of the powers of a receiver which are authorized by law to hold, retain,

manage, operate, preserve and protect the Premises and the other Defendants' Assets and otherwise to comply with the terms of this Order.

40.     The Receiver, its employees, agents and officers shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this Order or relating to events or circumstances occurring prior to the appointment of the Receiver. The protection of the Receiver from liability shall include, but not be limited to, any liability from the performance of services rendered by third parties on behalf of Defendants, and any liability for which Defendants are currently or may ultimately be exposed under applicable law pertaining to the ownership and operation of the Premises, except for claims due to their gross negligence, gross or willful misconduct, or malicious acts.   The receivership estate shall indemnify and hold harmless Receiver, its employees, attorneys, management companies, contractors or control persons from any claims made by persons not a party to this Order, which claims are related to or arise out of the operation of this receivership, except in the case where Receiver or its employees, employees, attorneys, management companies, contractors or control persons have committed fraud, gross negligence or willful misconduct or acted beyond the scope of the receivership authority.

41.     In the event that a bankruptcy case is filed by any Defendant during the pendency of the receivership created by this Order, Defendants must give notice of same to this Court, to all parties, and to the Receiver, within 24 hours of the bankruptcy filing.

42.     Upon receipt of notice that a bankruptcy has been filed which includes as part of the bankruptcy estate any property which is the subject of this Order, the Receiver shall do the following:

     a.     Immediately contact the Plaintiff and determine whether that party intends to move in the Bankruptcy Court for an order for both: (i) relief from the automatic stay

or motion to dismiss and (ii) relief from the Receiver's obligation to turn over the Defendants' Assets (11 U.S.C. Section 543). If the Plaintiff indicates no intention to file such a motion within 10 days, then the Receiver shall immediately turn over the Defendants' Assets (to the trustee in bankruptcy, or if one has not been appointed, then to the Defendant), and otherwise comply with 11 U.S.C. Section 543.

      b.     If the Plaintiff notifies the Receiver of its intention to immediately seek relief from the automatic stay or file a motion to dismiss, then the Receiver is authorized to remain in possession and preserve the Defendants' Assets pending the outcome of those motions pursuant 11 U.S.C. Section 543 (a). The Receiver's authority to preserve the Defendants' Assets is limited as follows: The Receiver may continue to collect rents, issues, and profits. The Receiver may make disbursements, but only those which are necessary to preserve and protect the Defendants' Assets. The Receiver shall not execute any new leases or other long-term contracts. The Receiver shall do nothing that would affect a material change in circumstances of the Defendants' Assets.

      c.     The Receiver is authorized to retain legal counsel to assist the Receiver with the bankruptcy proceedings.

43.    Upon the termination of the receivership, Receiver shall deliver to Plaintiff or its designee all Project Records, Information Technology and such books and records that should come into the Receiver's possession under this Order.

**IT IS FURTHER ORDERED**, that Defendants and all persons and entities acting in concert with any of them are hereby **ENJOINED** from: (a) taking any action inconsistent with the terms of this Order; (b) interfering with the Receiver exercising in his powers and performing its duties pursuant to this Order; (c) removing, destroying, concealing or altering any of the Defendants' Assets, specifically including, without limitation, the Project Records; (d) taking any action with respect to the control, use, management, preservation, repair, maintenance, leasing or operation of the Premises and the other Defendants' Assets, except as otherwise permitted under this Order or upon the specific request of the Receiver; (e)  no person or entity, including governmental entity, shall file suit against Receiver, or take other action against Receiver, regarding anything related to the Premises or Receiver's action or inaction as Receiver, without an order of the Court permitting the suit or action; provided, however, no prior court order is required to fila a motion in this action to enforce the

provisions of either this Order or any other order of the Court in this action; and (f) in the event of a sale of the subject loan or control over the subject loan documents is transferred to a party unaffiliated with Plaintiff, then the Receiver may withdraw as Receiver upon thirty (30) days' notice to the parties and this Court, or on any such earlier date as the Court may permit pursuant to an order of this Court.

**IT IS FURTHER ORDERED** that, and notwithstanding anything to the contrary contained herein, and with respect to the portion of the Premises that comprises the hotel commonly known as Courtyard Dallas Plano in Legacy Park (the "Plano-C Hotel"), the Receiver shall perform its duties hereunder in a manner that is in accordance with the terms of (i) the Plano-C SNDA and (ii) the Plano-C Management Agreement as if Receiver was the "Owner" thereunder.  The Plano-C SNDA and the Plano-C Management Agreement shall remain in full force and effect in accordance with their respective terms despite the appointment of the Receiver and the Receiver shall have no right to cancel or terminate the Plano-C Management Agreement, except in accordance with its terms.  Until such time as the Plano-C Management Agreement is terminated according to its terms, or this Order is modified with the consent of Courtyard Management Corporation, the Receiver or its designee shall have the rights granted to, and the obligations of Owner, as defined in the Plano-C Management Agreement and shall be entitled to act on behalf of, Owner under the Plano-C Management Agreement.  The Receiver shall comply with the terms of the Plano-C Management Agreement but shall not have any personal liability when acting as Owner to the extent insufficient funds prevent the Receiver's compliance.  If there are insufficient funds from the operation of the Plano-C Hotel to pay obligations of Owner pursuant to the terms of the Plano-C Management Agreement, Plaintiff shall fund such amounts.   The Receiver will not act in contravention of Courtyard Management Corporation's rights under the Plano-C SNDA and the Plano-C Management Agreement.  In addition, Courtyard Management Corporation will recognize the Receiver, or its designee, as the Owner under

the Plano-C Management Agreement, and Courtyard Management Corporation will continue to have the right to operate the Plano-C Hotel in accordance with Plano-C Management Agreement subject to its terms and conditions. Notwithstanding any other provision of this Order, Courtyard Management Corporation is authorized to pay any costs and expenses of the Plano-C Hotel, including costs and expenses that arise or relate to periods prior to the Receiver's appointment subject to and in accordance with the provisions of the Plano-C Management Agreement and the Plano-C SNDA. Receiver or its designee is, in all events, authorized and empowered to take any and all appropriate action required of Owner by and pursuant to the Plano-C Management Agreement, including taking any and all appropriate action in administering the Plano-C Management Agreement. Use of the terms "Defendants' Assets" and "Project Income" shall not include any "Defendant's Assets" or "Project Income" to be held by applicable Marriott Parties for the management and operation of the Plano-C Hotel pursuant to the terms of the Plano-C Management Agreement.

**IT IS FURTHER ORDERED** that, and notwithstanding anything to the contrary contained herein, and with respect to the portion of the Premises that comprises the hotel commonly known as the Residence Inn Dallas Plano/Legacy (the "Plano-R Hotel"), the Receiver shall perform its duties hereunder in a manner that is in accordance with the terms of (i) the Plano-R SNDA and (ii) the Plano-R Management Agreement as if Receiver was the "Owner" thereunder. The Plano-R SNDA and the Plano-R Management Agreement shall remain in full force and effect in accordance with their respective terms despite the appointment of the Receiver and the Receiver shall have no right to cancel or terminate the Plano-R Management Agreement, except in accordance with its terms. Until such time as the Plano-R Management Agreement is terminated according to its terms, or this Order is modified with the consent of Residence Inn by Marriott, LLC, the Receiver or its designee shall have the rights granted to, and the obligations of Owner, as defined in the Plano-R Management Agreement

and shall be entitled to act on behalf of, Owner under the Plano-R Management Agreement.  The Receiver shall comply with the terms of the Plano-R Management Agreement but shall not have any personal liability when acting as Owner to the extent insufficient funds prevent the Receiver's compliance. If there are insufficient funds from the operation of the Plano-R Hotel to pay obligations of Owner pursuant to the terms of the Plano-R Management Agreement, Plaintiff shall fund such amounts.  The Receiver will not act in contravention of Residence Inn by Marriott, LLC's rights under the Plano-R SNDA and the Plano-R Management Agreement.  In addition, Residence Inn by Marriott, LLC will recognize the Receiver, or its designee, as the Owner under the Plano-R Management Agreement, and Residence Inn by Marriott, LLC will continue to have the right to operate the Plano-R Hotel in accordance with Plano-R Management Agreement subject to its terms and conditions. Notwithstanding any other provision of this Order, Residence Inn by Marriott, Inc. is authorized to pay any costs and expenses of the Plano-R Hotel, including costs and expenses that arise or relate to periods prior to the Receiver's appointment subject to and in accordance with the provisions of the Plano-R Management Agreement and the Plano-R SNDA.  Receiver or its designee is, in all events, authorized and empowered to take any and all appropriate action required of Owner by and pursuant to the Plano-R Management Agreement, including taking any and all appropriate action in administering the Plano-R Management Agreement.  Use of the terms "Defendants' Assets" and "Project Income" shall not include any "Defendant's Assets" or "Project Income" to be held by applicable Marriott Parties for the management and operation of the Plano-R Hotel pursuant to the terms of the Plano-R Management Agreement.

IT IS FURTHER ORDERED that, and notwithstanding anything to the contrary contained herein, and with respect to the portion of the Premises that comprises the hotel commonly known as TownePlace Suites Los Angeles LAX/Manhattan Beach (the "Manhattan Beach Hotel"), the Receiver

shall perform its duties hereunder in a manner that is in accordance with the terms of (i) the Manhattan Beach SNDA and (ii) the Manhattan Beach Management Agreement as if Receiver was the "Owner" thereunder.  The Manhattan Beach SNDA and the Manhattan Beach Management Agreement shall remain in full force and effect in accordance with their respective terms despite the appointment of the Receiver and the Receiver shall have no right to cancel or terminate the Manhattan Beach Management Agreement, except in accordance with its terms.  Until such time as the Manhattan Beach Management Agreement is terminated according to its terms, or this Order is modified with the consent of Towneplace Management Corporation, the Receiver or its designee shall have the rights granted to, and the obligations of Owner, as defined in the Manhattan Beach Management Agreement and shall be entitled to act on behalf of, Owner under the Manhattan Beach Management Agreement.  The Receiver shall comply with the terms of the Manhattan Beach Management Agreement but shall not have any personal liability when acting as Owner to the extent insufficient funds prevent the Receiver's compliance. If there are insufficient funds from the operation of the Manhattan Beach Hotel to pay obligations of Owner pursuant to the terms of the Manhattan Beach Management Agreement, Plaintiff shall fund such amounts.  The Receiver will not act in contravention of Towneplace Management Corporation's rights under the Manhattan Beach SNDA and the Manhattan Beach Management Agreement.  In addition, Towneplace Management Corporation will recognize the Receiver, or its designee, as the Owner under the Manhattan Beach Management Agreement, and Towneplace Management Corporation will continue to have the right to operate the Manhattan Beach Hotel in accordance with Manhattan Beach Management Agreement subject to its terms and conditions.  Notwithstanding any other provision of this Order, Towneplace Management Corporation is authorized to pay any costs and expenses of the Manhattan Beach Hotel, including costs and expenses that arise or relate to periods prior to the Receiver's appointment subject

to and in accordance with the provisions of the Manhattan Beach Management Agreement and the Manhattan Beach SNDA.  Receiver or its designee is, in all events, authorized and empowered to take any and all appropriate action required of Owner by and pursuant to the Manhattan Beach Management Agreement, including taking any and all appropriate action in administering the Manhattan Beach Management Agreement.  Use of the terms "Defendants' Assets" and "Project Income" shall not include any "Defendant's Assets" or "Project Income" to be held by applicable Marriott Parties for the management and operation of the Manhattan Beach Hotel pursuant to the terms of the Manhattan Beach Management Agreement.

**IT IS FURTHER ORDERED** that, and notwithstanding anything to the contrary contained herein, and with respect to the portion of the Premises that comprises the hotel commonly known as Courtyard Inn by Marriott Basking Ridge (the "Basking Ridge Hotel"), the Receiver shall perform its duties hereunder in a manner that is in accordance with the terms of (i) the Basking Ridge SNDA and (ii) the Basking Ridge Management Agreement as if Receiver was the "Owner" thereunder.  The Basking Ridge SNDA and the Basking Ridge Management Agreement shall remain in full force and effect in accordance with their respective terms despite the appointment of the Receiver and the Receiver shall have no right to cancel or terminate the Basking Ridge Management Agreement, except in accordance with its terms. Until such time as the Basking Ridge Management Agreement is terminated according to its terms, or this Order is modified with the consent of Courtyard Management Corporation, the Receiver or its designee shall have the rights granted to, and the obligations of Owner, as defined in the Basking Ridge Management Agreement and shall be entitled to act on behalf of, Owner under the Basking Ridge Management Agreement.  The Receiver shall comply with the terms of the Basking Ridge Management Agreement but shall not have any personal liability when acting as Owner to the extent insufficient funds prevent the Receiver's compliance. If

there are insufficient funds from the operation of the Basking Ridge Hotel to pay obligations of Owner pursuant to the terms of the Basking Ridge Management Agreement, Plaintiff shall fund such amounts.  The Receiver will not act in contravention of Courtyard Management Corporation's rights under the Basking Ridge SNDA and the Basking Ridge Management Agreement.  In addition, Courtyard Management Corporation will recognize the Receiver, or its designee, as the Owner under the Basking Ridge Management Agreement, and Courtyard Management Corporation will continue to have the right to operate the Basking Ridge Hotel in accordance with Basking Ridge Management Agreement subject to its terms and conditions.  Notwithstanding any other provision of this Order, Courtyard Management Corporation is authorized to pay any costs and expenses of the Basking Ridge Hotel, including costs and expenses that arise or relate to periods prior to the Receiver's appointment subject to and in accordance with the provisions of the Basking Ridge Management Agreement and the Basking Ridge SNDA.  Receiver or its designee is, in all events, authorized and empowered to take any and all appropriate action required of Owner by and pursuant to the Basking Ridge Management Agreement, including taking any and all appropriate action in administering the Basking Ridge Management Agreement.  Use of the terms "Defendants' Assets" and "Project Income" shall not include any "Defendant's Assets" or "Project Income" to be held by applicable Marriott Parties for the management and operation of the Basking Ridge Hotel pursuant to the terms of the Basking Ridge Management Agreement.

**SO ORDERED** this 1st day of March, 2024.

Jennifer L. Rochon
U.S. District Court Judge

## EXHIBIT 1
## LEGAL DESCRIPTIONS

### Ashford Newark LP Legal Description

By Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing executed by **Ashford Newark LP**, a Delaware limited partnership to Morgan Stanley Bank, N.A., Bank of America, N.A. and Barclays Bank PLC, dated June 13, 2018 and recorded June 18, 2018 as Instrument No. 2018119196 in Alameda County, California, Ashford Newark, inter alia, pledged to the trustee identified therein property located at what is commonly known as 34905 Newark Boulevard, Newark, California 94560, as is more particularly described as follows:

**For APN/Parcel     537-0521-047-00
ID(s):**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF NEWARK, COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

PARCEL 2, PARCEL MAP 7596, FILED June 22, 2000, BOOK 252 OF PARCEL MAPS, AT PAGES 27 - 30, ALAMEDA COUNTY RECORDS.

BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE WEST CORNER OF PARCEL 2 OF PARCEL MAP 7596, FILED JUNE 22, 2000, BOOK 252 OF PARCEL MAPS, AT PAGES 27 - 30, ALAMEDA COUNTY RECORDS; THENCE FROM SAID POINT OF BEGINNING, ALONG THE PERIMETER OF SAID PARCEL 2, THE FOLLOWING COURSES AND DISTANCES: SOUTH 56° 30' 09" EAST, 388.89 FEET; NORTH 33° 29' 51" EAST, 50.00 FEET; SOUTH 56° 30' 09" EAST, 37.00 FEET; NORTH 33° 29' 51" EAST, 383.92 FEET; NORTH 56° 30' 09" WEST, 269.68 FEET; SOUTH 54° 25' 01" WEST, 286.11 FEET; AND SOUTH 51° 28' 08" WEST, 175.22 FEET TO THE SAID POINT OF BEGINNING.

PARCEL TWO:

A NON-EXCLUSIVE ACCESS EASEMENT, APPURTENANT TO PARCEL ONE, AS CONVEYED BY THAT CERTAIN "GRANT OF EASEMENT" RECORDED AUGUST 2, 1991, SERIES NO. 91-203822, ALAMEDA COUNTY RECORDS.

PARCEL THREE:

PRIVATE STORM DRAIN EASEMENT, APPURTENANT TO PARCEL ONE, OVER THOSE PORTIONS OF PARCELS 1 AND 3, PARCEL MAP 7596, FILED June 22, 2000, IN BOOK 252 OF PARCEL MAPS, AT PAGES 27 - 30, ALAMEDA COUNTY RECORDS (FORMERLY A PORTION OF PARCEL 3, PARCEL MAP 7499, FILED December 10, 1999, BOOK 249 OF MAPS, AT PAGES 1 - 3, ALAMEDA COUNTY RECORDS), DESIGNATED AS "PSDE" (PRIVATE STORM DRAIN EASEMENT) ON SAID MAP.

PARCEL FOUR:

A RECIPROCAL ACCESS AND UTILITY EASEMENT, APPURTENANT TO PARCEL
ONE, AS CONVEYED BY THAT CERTAIN "AGREEMENT" RECORDED December 23,
1999, SERIES NO. 99-451842, ALAMEDA COUNTY RECORDS, AND AMENDED BY
THAT CERTAIN "FIRST AMENDMENT TO RECIPROCAL ACCESS AND UTILITY
EASEMENT AGREEMENT" RECORDED June 21, 2000, SERIES NO. 2000-183449,
ALAMEDA COUNTY OFFICIAL RECORDS, OVER THOSE PORTIONS OF PARCELS
1 AND 3, PARCEL MAP 7596, FILED June 22, 2000, BOOK 252 OF PARCEL MAPS,
AT PAGES 27 - 30, ALAMEDA COUNTY RECORDS, SHOWN AS "PAE" AND "UE"
THEREON.

**Ashford BWI Airport LP Legal Description**

By Deed of Trust, Assignment of Leases and Rents, and Security Agreement from **Ashford BWI Airport LP** to Lawyers Title Realty Services, Inc., trustee, for the benefit of Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., dated June 13, 2018 and recorded June 26, 2018 in Liber 32247 at folio 346 in Ann Arundel County, Maryland, Ashford BWI, inter alia, pledged to the trustee identified therein, property located at what is commonly known as 899 Elkridge Landing Road, Linthicum Heights, Maryland 21090, as is more particularly described as follows:

All that certain lot or parcel of land together with all improvements thereon located and being in the County of Anne Arundel, Maryland and being more particularly described as follows:

PARCEL Lot No. 1, as shown on a Plat entitled, "Amended Plat of Resubdivision Plat of Airport Square Park & Airport Square Eleven", which Plat is recorded among the Land Records of Anne Arundel County, Maryland, in Plat Book 99 at folio 1 as Plat No. 5126.

LEGAL DESCRIPTION: AS SURVEYED

Beginning for the same at a point on the easterly right-of-way of Elkridge Landing Road, 60 feet wide, as shown on a plat entitled, "Airport Square Park & Airport Square Eleven" as recorded among the Plat Records of Anne Arundel County, Maryland in Plat Book 93 at Folio 22, said point being also located at the beginning of the South 71 degrees 43 minutes 53 seconds East 390.49 foot line of a parcel of land shown on a plat entitled "Airport Square Addition" as recorded among the said Plat Records in Plat Book 89 at Folio 19; thence departing said point so fixed, with meridian reference to Maryland State Grid North as now surveyed (1) South 71 degrees 43 minutes 53 seconds East 344.13 feet; thence for a line of division, binding reversely along the outline of Lot 11 as shown on a plat entitled "Resubdivision Plat of Airport Square Park & Airport Square Eleven" as recorded among the said Plat Records in Plat Book 97 at Folio 8, the four following courses and distances (2) South 27 degrees 46 minutes 47 seconds West, 79.82 feet; thence (3) southwesterly 220.70 feet along the arc of a curve to the right having a radius of 710.00 feet and a chord bearing and distance of South 36 degrees 41 minutes 05 seconds West 219.81 feet; thence (4) southwesterly 134.68 feet along the arc of a curve to the left having a radius of 80.00 feet and a chord bearing and distance of South 49 degrees 54 minutes 08 seconds West 119.33 feet, thence (5) South 57 degrees 00 minutes 23 seconds West 116.72 feet; thence binding along the outline of said parcel of land shown on the plat entitled "Airport Square & Airport Square Eleven" the following three courses and distances (6) North 77 degrees 06 minutes 44 seconds West 294.85 feet; thence (7) North 14 degrees 06 minutes 12 seconds East 74.85 feet to the southerly right-of-way of said Elkridge Landing Road; thence binding along said right-of-way; (8) northeasterly 495.89 feet along the arc of a curve to the left having a radius of 410.00 feet and a chord bearing and distance of North 40 degrees 04 minutes 02 seconds East 466.22 feet to the point of beginning.

BEING KNOWN AND DESIGNATED as Lot No. 1, as shown on a Plat entitled, "Amended Plat of Resubdivision Plat of Airport Square Park & Airport Square Eleven", which Plat is recorded among the Land Records of Anne Arundel County, Maryland, in Plat Book 99 at folio 1 as Plat No. 5126.

TOGETHER WITH all rights, title and interest in an easement granted in Deed and Declaration recorded July 3, 1984 in Liber E.A.C. No. 3754, folio 460, as amended by Amendment to Deed and Declaration recorded February 11, 1985 in Liber E.A.C. No. 3850, folio 464, as to the following described Lands:

EASEMENT PARCELS:

Lots 8 & 9, as shown on a plat entitled "Lots 8, 9, & 10, Resubdivision Plat of Lot 2, Airport Square Addition" which plat is recorded among the Land Records of Anne Arundel County in Plat Book 92, folio 42.

**Ashford Oakland LP Legal Description**

By Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing from **Ashford Oakland LP** to Chicago Title Company, as trustee for the benefit of Bank of America, N.A., a national banking association, Barclays Bank PLC, a public company registered in England and Wales and Morgan Stanely Bank, N.A., a national banking association, dated June 13, 2018 and recorded June 18, 2018, as Instrument No. 2018119200 of Official Records of Alameda County, California, Ashford Oakland, inter alia, pledged to the trustee identified therein property located at what is commonly known as 350 Hegenberger Road, Oakland, California 94621, as is more particularly described as follows:

**For APN/Parcel ID(s):**    044-5076-009-03

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF OAKLAND, COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

All that portion of Lots 2, 3, 4, 5, 6 & 7 as said Lots are shown on Block 1, Map of Tract 1315, filed August 21, 1953, in Book 34 of Maps, Page 1, in the Office of the County Recorder of Alameda County, more particularly described as follows:

Commencing at the northeasterly corner of said Lot 7, thence from said point of commencement along the easterly line of said Lot 7 south 19° 35' 30" west 93.20 feet to the point of beginning.

Thence from said point of beginning the following courses:

A. Along the easterly lines of said Lots 5, 6 & 7, south 19° 35' 30" west 318.00 feet; thence

B. Leaving the easterly line of said Lot 5, north 70° 24' 30" west 400.00 feet to the westerly line of said Lot 4, thence

C. Along the westerly line of said Lots 2, 3 & 4, north 19° 35' 30" east 318.00 feet, thence

D. Leaving the easterly line of said Lot 2, south 70° 24' 30" east 400.00 feet to the point of beginning.

**Ashford Plano-C LP Legal Description**

By Deed of Trust, Assignment of Leases and Rents and Security Agreement executed by

**<u>Ashford Plano-C, LP</u>** to Mark A. Gentry, Trustee, for the benefit of Bank of America, N.A., a

national banking association, Barclays Bank PLC, a public company registered in England and

Wales and Morgan Stanley Bank, N.A., a national banking association, collective dated June 13,

2018 and filed June 15, 2018, recorded in/under Clerk's File No. 20180615000743220 of the Real

Property Records of Collin County, Texas, Ashford Plano-C, inter alia, pledged to the trustee

identified therein property located at what is commonly known as 6840 Dallas Parkway, Plano,

Texas 75024, as is more particularly described as follows:

Lot 1, Block 1 of Courtyard Legacy Addition, an addition to the City of Plano, as recorded in Cabinet K, Page 811, Plat Records, Collin County, Texas.

**Ashford Plano-R LP Legal Description**

By Deed of Trust, Assignment of Leases and Rents, Security Agreement executed by

**Ashford Plano-R, LP** to Mark A. Gentry, Trustee, for the benefit of Bank of America, N.A., a

national banking association, Barclays Bank PLC, a public company registered in England and

Wales and Morgan Stanley Bank, N.A., a national banking association, dated June 13, 2018 and

filed June 15, 2018, recorded in/under Clerk's File No. 20180615000743310 of the Real Property

Records of Collin County, Texas, Ashford Plano-R, inter alia, pledged to the trustee identified

therein, property located at what is commonly known as 5001 Whitestone Lane, Plano, Texas, USA,

75024, as is more particularly described as follows:

TRACT 1:
Lot 1R, Block C, of REPLAT OF PART OF LOT 2, BLOCK C, EDS LAKE ADDITION; CITY OF PLANO,
COLLIN COUNTY, TEXAS; CABINET H, PAGES 527 THROUGH 530, an addition to the City of Plano as
recorded in Cabinet K, Page 608, Plat Records, Collin County, Texas.

TRACT 2: (EASEMENT ESTATE)
Easement Estate as created by that certain Master Declaration of Covenants, Conditions and Restrictions
dated June 3, 1996, executed by Electronic Data Systems Corporation, recorded June 4, 1996 under
Clerk's File No. 96-0046024, Real Property Records, Collin County, Texas.

### Ashford Manhattan Beach LP Legal Description

By Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing from **Ashford Manhattan Beach LP** to Chicago Title Company, as trustee for the benefit of Morgan Stanley Bank, N.A., a national banking association, Bank of America, N.A., a national banking association, Barclays Bank PLC, dated June 13, 2018 and recorded June 19, 2018, Instrument No. 20180609541 in Los Angeles County, California, Ashford Manhattan Beach, inter alia, pledged to the trustee identified therein, property located at what is commonly known 14400 Aviation Boulevard, Los Angeles, California 90250, as is more particularly described as follows:

A NON EXCLUSIVE EASEMENT, APPURTENANT TO PARCEL A, FOR VEHICULAR ACCESS AND EGRESS, PUBLIC AND PRIVATE UTILITIES, WITH PEDESTRIAN INGRESS AND EGRESS, AND APPURTENANCES THEREOF, PURSUANT TO ARTICLE 4 OF THAT CERTAIN DECLARATION OF RECIPROCAL EASEMENTS, COVENANTS, CONDITIONS AND RESTRICTIONS, AS AFFECTING THE COMMON AREAS DESCRIBED IN EXHIBITS B AND C, PURSUANT TO THE RECORDATION THEREOF ON NOVEMBER 9, 1998 AS INSTRUMENT NO. 98-2053544, AND AS AMENDED BY FIRST AMENDMENT RECORDED FEBRUARY 3, 2000 AS INSTRUMENT NO. 00-0170110

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF HAWTHORNE, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

LOTS 1 AND 2 OF TRACT 52582, IN THE CITY OF HAWTHORNE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1231, PAGES 25 AND 26, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE THEREOF; BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN THE DEED RECORDED NOVEMBER 18, 1956 IN BOOK 53076, PAGE 82, OFFICIAL RECORDS.

PARCEL B:

A NON EXCLUSIVE EASEMENT, APPURTENANT TO PARCEL A, FOR VEHICULAR ACCESS AND EGRESS, PUBLIC AND PRIVATE UTILITIES, WITH PEDESTRIAN INGRESS AND EGRESS, AND APPURTENANCES THEREOF, PURSUANT TO ARTICLE 4 OF THAT CERTAIN DECLARATION OF RECIPROCAL EASEMENTS, COVENANTS, CONDITIONS AND RESTRICTIONS, AS AFFECTING THE COMMON AREAS DESCRIBED IN EXHIBITS B AND C, PURSUANT TO THE RECORDATION THEREOF ON NOVEMBER 9, 1998 AS INSTRUMENT NO. 98-2053544, AND AS AMENDED BY FIRST AMENDMENT RECORDED FEBRUARY 3, 2000 AS INSTRUMENT NO. 00-0170110

## Ashford Basking Ridge LP Legal Description

By Mortgage, Assignment of Leases and Rents and Security Agreement between **Ashford Basking Ridge LP**, a Delaware limited partnership, to Bank of America, N.A., a national banking association, Barclays Bank PLC, a public company registered in England and Wales, and Morgan Stanley Bank, N.A., a national banking association, dated June 13, 2018, recorded with the Clerk/Register of Somerset County on July 3, 2018 in Book 7053, page 2892, Ashford Basking Ridge, inter alia, pledged to the trustee identified therein property located at what is commonly known as 595 Martinsville Road, Basking Ridge, New Jersey 07920, as is more particularly described as follows:

Beginning at a point located on the west right of way line of Martinsville Road, said point being situate South 05 degrees 03 minutes 06 seconds West, a distance of 538.14 feet from a point located at the intersection of the centerline of Colonial Crossing with the centerline of aforementioned Martinsville Road; thence from the place of BEGINNING.

1.   Along the aforementioned West right of way line of Martinsville Road, South 15 degrees 45 minutes 42 seconds West for a distance of 131.75 feet to a point; thence

2.   Further along the same, around a curve having an angle of 03 degrees 30 minutes 10 seconds, a radius of 1,967.00 feet, a tangent of 60.14 feet, an arc of 120.25 feet, for a chord course of South 17 degrees 30 minutes 47 seconds West for a chord distance of 120.23 feet to a point; thence

3.   Still further along the same, South 19 degrees 15 minutes 52 seconds West for a distance of 73.18 feet to a point; thence

4.   Along the North Right of Way line of Ramp "MA" to Interstate I-78, around a curve having an angle of 06 degrees 33 minutes 21 seconds, a radius of 856.95 feet, a tangent of 49.08 feet, an arc of 98.05 feet, for a chord course of South 32 degrees 10 minutes 43 seconds West for a chord distance of 98.00 feet to a point; thence

5.   Further along the same, South 44 degrees 24 minutes 11 seconds West for a distance of 172.80 feet to an old metal disk; thence

6.   Still further along the same, around a curve having a angle of 20 degrees 32 minutes 32 seconds, a radius of 700.00 feet, a tangent of 126.85 feet, an arc of 250.97 feet, for a chord course of South 54 degrees 40 minutes 27 seconds West for a chord distance of 249.63 feet to an old metal disk; thence

7.   Still further along the same, around a curve having an angle of 28 degrees 55 minutes 03 seconds, a radius of 450.00 feet, a tangent of 116.03 feet, an arc of 227.12 feet, for a chord course of South 79 degrees 24 minutes 24 seconds West for a chord distance of 224.71 feet to a point; thence

8.   Still further along the same, North 86 degrees 08 minutes 04 seconds West, for a distance of 638.73 feet to an old metal disk; thence

9.   Along the North Right of Way line of aforementioned Interstate 1-78, North 70 degrees 59 minutes 54 seconds West, for a distance of 80.81 feet to a point; thence

10.   North 18 degrees 13 minutes 00 seconds East, for a distance of 788.27 feet to a point; thence

11.   South 84 degrees 19 minutes 00 seconds East, for a distance of 1,166.76 feet to the place of BEGINNING

**EXHIBIT 2**
**CERTAIN DEFINED TERMS**

As used in the Order to which this **Exhibit 2** is attached, the following terms shall have the meanings ascribed thereto as set forth below:

"Affiliate" shall mean, as to any Person, any other Person that, directly or indirectly, controls, is controlled by or is under common control with such Person. For purposes of this definition, the term "control" (including the terms "controlling," "controlled by" and "under common control with") of a Person means the possession, directly or indirectly, of the power: (i) to vote more than fifty percent (50%) of the voting stock of such Person; or (ii) to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting stock, by contract or otherwise.

"Basking Ridge Management Agreement" shall mean that certain Amended and Restated Management Agreement dated March 1, 2002, as amended and assigned, currently between Ashford TRS Basking Ridge LLC and Courtyard Management Corporation, under which Courtyard Management Corporation operates the Courtyard Inn by Marriott Basking Ridge.

"Basking Ridge SNDA" shall mean that certain Subordination, Non-Disturbance and Attornment Agreement dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Courtyard Management Corporation, as the Manager, Ashford Basking Ridge LP, as the Borrower, and Ashford TRS Basking Ridge LLC, as the Lessee.

"BWI Airport A&S" shall mean that certain Assignment and Subordination of Management Agreement and Consent of Manager dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Remington Lodging & Hospitality, LLC, as the Manager, Ashford BWI Airport LP, as the Borrower, and Ashford TRS BWI Airport LLC, as the Lessee.

"BWI Airport Management Agreement" shall mean that certain Amended and Restated Management Agreement dated September 29, 2006, as amended and assigned, currently between Ashford TRS BWI Airport LLC and Remington Lodging & Hospitality, LLC, under which Remington Lodging & Hospitality, LLC operates the SpringHill Suites by Marriott Baltimore.

"Gross Revenues" shall mean, with respect to each Hotel: (I)(A) Amounts actually collected by Receiver as rents or other charges for use and occupancy of such Hotel; and (B) all miscellaneous income earned by such Hotel, but shall exclude income derived from: (I) proceeds of claims on account of insurance policies; (II) abatement of taxes; (III) awards arising out of takings by eminent domain; (IV) discounts and dividends on insurance policies; (V) proceeds of any sale of all or any portion of such Hotel.

"Lease" means any lease, sublease, license (excluding the Franchise Agreements and the New Franchise Agreements), occupancy agreement and any other agreement, together with all modifications and amendments thereto, which relate to the use or occupancy of any part of the Premises.

"Loan" means that certain loan from Plaintiff to Defendants in the original principal amount of $86,640,000, which is secured by the Premises, among other things.

"Loan Documents" means all documents, instruments and agreements evidencing, securing or relating to the Loan, specifically including, without limitation, the Loan Documents as defined in the Complaint.

"Manhattan Beach Management Agreement" shall mean that certain Amended and Restated Management Agreement dated January 18, 2002, as amended and assigned, currently between Ashford TRS Manhattan Beach LLC and Towneplace Management Corporation, under which Towneplace Management Corporation operates the TownePlace Suites Los Angeles LAX/Manhattan Beach.

"Manhattan Beach SNDA" shall mean that certain Subordination, Non-Disturbance and Attornment Agreement dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Towneplace Management, LLC, as the Manager, Ashford Manhattan Beach LP, as the Borrower, and Ashford TRS Manhattan Beach LLC, as the Lessee.

"Newark A&S" shall mean that certain Assignment and Subordination of Management Agreement and Consent of Manager dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Remington Lodging & Hospitality, LLC, as the Manager, Ashford Newark LP, as the Borrower, and Ashford TRS Newark LLC, as the Lessee.

"Newark Management Agreement" shall mean that certain Amended and Restated Management Agreement dated September 29, 2006, as amended and assigned, currently between Ashford TRS Newark LLC and Remington Lodging & Hospitality, LLC, under which Remington Lodging & Hospitality, LLC operates the Courtyard by Marriott Silicon Valley.

"Oakland A&S" shall mean that certain Assignment and Subordination of Management Agreement and Consent of Manager dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Remington Lodging & Hospitality, LLC, as the Manager, Ashford Oakland LP, as the Borrower, and Ashford TRS Oakland LLC, as the Lessee.

"Oakland Management Agreement" shall mean that certain Amended and Restated Management Agreement dated September 29, 2006, as amended and assigned, currently between Ashford TRS Oakland LLC and Remington Lodging & Hospitality, LLC, under which Remington Lodging & Hospitality, LLC operates the Courtyard by Marriott Oakland.

"Plano-C Management Agreement" shall mean that certain Amended and Restated Management Agreement dated January 4, 2003, as amended and assigned, currently between Ashford TRS Plano-C LLC and Courtyard Management Corporation, under which Courtyard Management Corporation operates the Courtyard Dallas Plano in Legacy Park.

"Plano-C SNDA" shall mean that certain Subordination, Non-Disturbance and Attornment Agreement dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Courtyard Management

Corporation, as the Manager, Ashford Plano-C LP, as the Borrower, and Ashford TRS Plano-C LLC, as the Lessee.

"Plano-R Management Agreement" shall mean that certain Amended and Restated Management Agreement dated January 4, 2003, as amended and assigned, currently between Ashford TRS Plano-R LLC and Residence Inn by Marriott, LLC, under which Residence Inn by Marriott, LLC operates the Residence Inn Dallas Plano/Legacy.

"Plano-R SNDA" shall mean that certain Subordination, Non-Disturbance and Attornment Agreement dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Residence Inn by Marriott, LLC, as the Manager, Ashford Plano-R LP, as the Borrower, and Ashford TRS Plano-R LLC, as the Lessee.

"Project Accounts" means collectively all checking, savings and depository accounts, all payroll, vendor, petty cash, escrow and security deposit accounts and all other accounts containing or evidencing any Project Income, defined below.

"Project Deposits" means all security and utility, prepayments, room deposits made for advance reservations, and other deposits received by Defendants and their agents under any Lease or any other agreement relating to the ownership, operation, maintenance, repair, restoration or use of the Premises, and all deposits made by Defendants to any utility or other service provider, contractor, vendor, lessor or other person or entity in connection with any labor, services, material or other items or property relating to the Premises.

"Project Documents" is defined to the broadest extent permitted under applicable law and specifically includes, without limitation: the originals of all books, records, statements, checkbooks, check registers, cancelled checks, bank and other statements, worksheets, spread sheets, memoranda, statements of account, receipts, files and other financial information; the originals of all leases, subleases, rental agreements, occupancy agreements, license agreements and amendments relating to the rental, occupancy, licensing and/or use of the Premises (including, without limitation, the Franchise Agreements), together with all files, correspondence and communications with all past, current and prospective lessees, tenants, occupants, licensees and/or users of the Premises and their agents and representatives; the originals of all marketing, advertising, listing and promotional materials; all telephone, facsimile, e-mail and post office box numbers and addresses, the originals of all listing and commission contracts, agreements and commitments, together with all files, correspondence and communications with all brokers and their agents and representatives; the originals of all pictures, plans, floor plans, space plans, stacking plans, surveys, maps, specifications, drawings and other depictions and descriptions of the Premises; the originals of all permits, licenses (including, without limitation, liquor licenses), authorizations and other approvals; the originals of all contracts, agreements, purchase orders, invoices, bills, receipts, account statements, files, correspondence and communications with all utility companies, service providers, contractors, subcontractors, vendors, vendees, governmental authorities, adjacent land owners and other third parties having a right to ownership, repair, maintenance, improvement, management, leasing, operation, use, operation, preservation and/or protection of the Premises; all maintenance and testing records with respect to mechanical systems, fire life safety systems, plumbing systems, or other systems for which any Defendant has had maintenance or repair obligations within the two (2) years immediately preceding the date of this Order; the originals of all insurance policies and of all files, correspondence and communications with all insurance companies and their respective agents,

brokers and representatives; copies of all local, state and federal tax returns for Defendants and for the Premises; the originals of all employee contracts and agreements and of all correspondence and communications with employees of Defendant, all employer and employee files, all payroll and employee records and copies of all local, state and federal employer and employee reports, tax deposits and returns; the originals of all notices, protests, objections, claims, demands, suits, complaints, petitions, injunctions, restraining orders, pleadings and mediation and arbitration proceedings received, sent or filed by or against the Premises or Defendants which in any way relates to or involves the Defendants' Assets. Additionally, the term "*Project Documents*" means and includes all such documents, information, instruments and materials, whether in tangible form or in the form of websites, social media accounts, computer or electronically stored or generated images, e-mails or other data, all login names and passwords and to the extent any of such documents, information, instruments or materials are computer or electronically stored or generated, Defendants shall provide, or cause to be provided, to the Receiver the original or copies of such computer programs or other computer software as may be necessary or reasonably required by the Receiver to access, read and make tangible copies thereof, together with all access codes, combinations and passwords necessary to gain access thereto.

"Project Expenses" means all costs, expenses, payments and other monetary obligations and liabilities, specifically including, without limitation, all Hotel employee payroll expenses, all real and personal property taxes and assessments, all costs of centralized purchasing or finance services programs directly related to the Hotels and all insurance premiums relating to the Premises.

"Project Income" means all rents, room fees and other income of the Hotels (including revenue from food and beverage services, telecommunication services and other services of the Hotels), issues, profits, income and other revenue of whatsoever nature or amount derived from or relating to the Premises, including, without limitation, any prepaid rents, room fees and income and any termination fees or payments relating to the operation of the Hotels and any Lease or other contract or agreement affecting the Premises and the proceeds from any insurance policy, any condemnation award and from the sale of all or any portion of the Premises.

"Tenant" means any tenant, lessee, subtenant, sublessee, licensee, occupant or other user of all or any part of the Premises under any current or previous Lease.

**EXHIBIT 3**
**RECEIVER'S FEE**

| RECEIVER & MANAGEMENT | | | |
|---|---|---|---|
| | Receiver Fee* | Management Fee* | Accounting* |
| **(4) Marriott Managed** | **$4,000** | **N/A** | **N/A** |
| **(3) Remington Managed** | **$4,000** | **N/A** | **N/A** |
| Courtyard Basking Ridge - Basking Ridge, NJ (Marriott Managed) | | | |
| Courtyard Dallas Plano in Legacy Park - Plano, TX (Marriott Managed) | | | |
| Residence Inn by Marriott Dallas Plano/Legacy- Plano, TX (Marriott Managed) | | | |
| TownePlace Suites Los Angeles LAX/Manhattan Beach - Hawthorne, CA (Marriott Managed) | | | |
| Courtyard Newark Silicon Valley - Newark, CA (Remington Managed) | | | |
| Courtyard Oakland Airport - Oakland, CA Residence Inn Dallas Plano/Legacy - Plano, TX (Remington Managed) | | | |
| SpringHill Suites Baltimore BWI Airport - Linthicum Heights, MD (Remington Managed) | | | |
| **IF GF replaced (3) Remington managed hotels:** | **$500** | **Greater of 2.5% or $5,000 of gross** | **$1,000** |
| Courtyard Newark Silicon Valley - Newark, CA | | | |
| Courtyard Oakland Airport - Oakland, CA Residence Inn Dallas Plano/Legacy - Plano, TX | | | |
| SpringHill Suites Baltimore BWI Airport - Linthicum Heights, MD | | | |

*Above terms are per month, per hotel.*

*Additional Terms*
- Reimbursement of reasonable out of pocket expenses
- Court appearance fee equal to $1,500 per day plus out of pocket expenses
- One time wind down fee of $2,500 per hotel, upon termination
- In the event that out-of-pocket expenses are incurred prior to the appointment of the Receiver, and the receivership for any cause is not actualized, those expenses will be reimbursed to GF or its affiliate.